UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CHRISTA RITTER, formerly known as,
CHRISTA KLISIVITCH,

            Plaintiff,

    -v.-

WILLIAM KLISIVITCH, COLETTE PANEBIANCO
(now known as COLETTE KLISIVITCH), ZVI
GRINBAUM, FRANCES TROTTO, ITM WORLD
GROUP, LLC, 142456 CANADA, INC., 127630
CANADA, INC., WVDAC HOLDINGS INC., a/k/a
GESTIONS WVDAC, INC., INTERNATIONAL
TEXTILE MACHINES CANADA LTD., a/k/a
LES MACHINES TEXTILES INTERNATIONALES
DU CANADA LTEE, trading as ITM WORLD
GROUP/ GROUP MONDIAL ITM, JOHN DOE 1-5
and JANE DOE 1-5 (being and intended to be persons
whose identity are unknown who have joined with one
or more named defendants in a conspiracy to deprive
plaintiff of her rights),

            Defendants.

_____

**MEMORANDUM & ORDER**
06-CV-5511 (DRH)(WDW)

**APPEARANCES:**

**For the Plaintiff:**
**ARNOLD B. FIRESTONE P.C.**
612 Veterans Memorial Highway
Hauppauge, New York 11788
By: Arnold B. Firestone, Esq.

**For Defendant William Klisivitch:**
**O. STEPHEN PAGANUZZI, JR., ESQ.**
489 Fifth Avenue
New York, New York 10017

**For Defendants Colette Klisivitch, Zvi Grinbaum, Frances Trotto, ITM World Group
LLC, 127360 Canada, Inc., 142456 Canada, Inc., WVDAC Holdings Inc. and International
Textiles Machines Canada, Ltd.:**
**FOX ROTHSCHILD LLP**
100 Park Avenue, Suite 1500
New York, New York 10017

**HURLEY, Senior District Judge**:

Plaintiff Christa Ritter ("Plaintiff") filed the present action alleging that defendants William Klisivitch ("Klisivitch"), Colette Klisivitch, Zvi Grinbaum, Frances Trotto, ITM World Group LLC, 127360 Canada, Inc., 142456 Canada, Inc., WVDAC Holdings Inc., and International Textiles Machines Canada, Ltd. (collectively, "Defendants") engaged in a civil RICO conspiracy involving, inter alia, bankruptcy fraud, wire fraud, and mail fraud to prevent Plaintiff from collecting on several judgments she holds against Klisivitch. Plaintiff also alleges that the property transfers effected in the course of the conspiracy were fraudulent conveyances under state law, and asserts several other state law claims. Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff cross-moves for leave to amend pursuant to Rule 15(a) and for an Order pursuant to Rule 42 consolidating the above-captioned action with an action commenced by Plaintiff against Klisivitch and Colette Panebianco, docket no. 07-CV-1853. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's cross-motion for leave to amend is granted in part and Plaintiff's cross-motion to consolidate this action with a later-filed suit is granted.

## BACKGROUND

The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion.

### I. Factual Background

Plaintiff and Klisivitch were married on September 30, 1982. Klisivitch began divorce proceedings in 1994 in New York Supreme Court, Suffolk County. In April 2002, a

final judgment of divorce was entered.  On September 23, 2002, the state court issued an order

which, inter alia, directed money judgments be entered against Klisivitch in Plaintiff's favor in

the sums of:  (1) $187,251.71, which constituted arrears and maintenance, arrears of mortgage

payments, arrears of carrying charges of the marital residence, and counsel fees; (2)

$183,500.00, which constituted arrears and counsel fees; and (3) $6,155.00 for additional

counsel fees.  Thereafter, on December 18, 2002, three judgments were entered against

Klisivitch for $191,223.19, $187,391.50, and $6,285.72, constituting the above-referenced

amounts plus interest.

On May 7, 2003, the state court issued a Qualified Domestic Relations Order

("QDRO") directing that Plaintiff be awarded $187,251.71, representing arrears Plaintiff was

entitled to as of September 23, 2002, with interest at the rate of 9%, from Klisivitch's pension

plan.

By order dated August 5, 2004, the New York Supreme Court directed Citicorp

Investment Services to pay over the sum of $385,628.89 from Klisivitch's Individual Retirement

Rollover Account ("IRRA") to Plaintiff.  On August 20, 2004, Klisivitch filed a voluntary

bankruptcy petition under Chapter 7 of the Bankruptcy Code in the Eastern District of New

York, listing Plaintiff as a creditor, thereby staying Plaintiff's rights to collect on her judgments.


**II.** *The Instant Action*

Plaintiff initiated this action in the New York State Supreme Court, Suffolk

County, on September 11, 2006.  By Notice of Removal dated October 12, 2006, the action was

removed to this Court.  Jurisdiction is premised upon both diversity and RICO.  Plaintiff alleges

that Defendants engaged in "a RICO enterprise scheme, namely the 'HATE RICO Enterprise,'" (Am. Compl. ¶ 132), whose activities included tax evasion, money laundering, financial institution fraud, insurance fraud, bankruptcy fraud, and obstruction of justice, all with the intended goal of preventing Plaintiff from collecting on her judgments. For example, Plaintiff alleges that Defendants committed mail fraud by using the United States mail to file fraudulent tax returns, false affidavits, and fraudulent information with financial institutions. Plaintiff further alleges that Defendants committed wire fraud by using interstate and foreign wires to transfer cash and assets. She also claims that Klisivitch filed false and fraudulent schedules in the bankruptcy proceeding, that Colette Panebianco and Klisivitch testified falsely in a deposition taken in the bankruptcy action, that Klisivitch testified falsely at a creditors' committee examination, and that Klisivitch directed his attorneys and agents to withhold inculpatory documents from discovery. The Amended Complaint also alleges "financial institution fraud" arising out of several defendants' alleged inflation of the value of property lost in a fire, thereby obtaining insurance benefits from Zurich American Insurance Company greatly in excess of the actual loss of property.

The individual defendants are alleged to have participated in the scheme, in part, as follows: (1) Klisivitch fraudulently diverted money by transferring cash to Colette Panebianco which was used by her to acquire real property; (2) Ms. Panebianco filed a fraudulent mortgage application and commitment in connection with that property; (3) Zvi Grinbaum signed and transmitted a fraudulent gift letter in connection with the purchase of this property by falsely stating that he gifted a sum of money to Klisivitch; (4) Zvi Grinbaum obtained monies as dividends funneled through the defendant companies without consideration; (5) Frances Trotto

-4-

assisted her daughter Colette Panebianco in acquiring real property for no consideration and

obtained goods, services, and cash without consideration; and (6) Klisivitch evaded personal and

business income taxes, stole money from his retirement plan, a portion of which Plaintiff was

entitled to, illegally funneled money through his companies, and submitted false affidavits in the

state court proceeding.

The company defendants are alleged to have participated in the scheme by, inter

alia, receiving and laundering money via wire, acquiring property without payment of the proper

tax, and fraudulently writing off personal expenses of the individual defendants as legitimate

business expenses.

The victims are alleged to be mortgage companies with whom Defendants

allegedly filed false information, the IRS, the New York State Department of Taxation and

Finance, and Zurich American Insurance Company, although Plaintiff is alleged to be the

primary intended victim." (*Id.* ¶ 173.)

With regard to damages, Plaintiff alleges that as a result of Defendants' actions,

she has incurred counsel fees, "which counsel [fees] were and are necessary to secure her rights

to collect the judgments duly docketed against William Klisivitch, and to collect and enforce the

provisions of the QDRO." (*Id.* ¶ 337.) She further alleges that her damages include the penalties

and interest accruing on the judgments. (*Id.* ¶ 338.)

In addition to her RICO claims, Plaintiff asserts that Defendants fraudulently

transferred assets pursuant to N.Y. Debtor and Creditor Law, tortiously interfered with the

collection of assets, and are liable for fraud, prima facie tort, and intentional infliction of

emotional distress.

**III.** *Klisivitch's Bankruptcy Action*

Plaintiff moved to dismiss Klisivitch's bankruptcy case on the ground that he filed it in bad faith. On June 27, 2007, Plaintiff's motion was granted and Klisivitch's petition was dismissed. Thereafter, Klisivitch appealed the dismissal of his bankruptcy case to this Court and on June 17, 2008, Judge Sandra J. Fueurstein vacated the Bankruptcy Court's dismissal order and remanded the case to the Bankruptcy Court for reconsideration of Plaintiff's motion to dismiss.

**IV.** *The Instant Motions*

Defendants move to dismiss the Amended Complaint in its entirety. Plaintiff cross-moves for leave to amend and for an Order consolidating this action with a later-filed suit, docket no. 07 CV 1853. Attention will first be directed to Defendants' motion and the applicable standards.

## *DISCUSSION*

**I.** *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).[1] As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## II. *The RICO Claims*

### A. *Applicable Law*

"RICO is a broadly worded statute that 'has as its purpose the elimination of the

---

[1] Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Bell v. Hubbert*, No. 95 Civ. 10456, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (citations and internal quotation marks omitted).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted). Thus, to state a claim under the civil RICO statute, "a plaintiff has two pleading burdens." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, the complaint must allege that the defendant has violated "the substantive RICO statute . . . commonly known as 'criminal RICO.'" *Id.* In order to meet this initial burden, a plaintiff must plead "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *See id.* Allegations in support of predicate acts sounding in fraud, such as mail or wire fraud, must satisfy the rigors of Rule 9(b). *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993); *Zhu v. First Atl. Bank*, No. 05 Civ. 96, 2005 WL 2757536, at *3 (S.D.N.Y. Oct. 25, 2005). Second, a plaintiff must allege that the injury to business or property occurred by reason

of a violation of the criminal RICO statute.  *See Moss,* 719 F.2d at 17.

**B.**     ***Plaintiff has Standing to Assert her RICO Claims***

Defendants' primary argument is that Plaintiff lacks standing to assert her RICO

claims.  A plaintiff has standing to bring a RICO claim only if she has been "injured in h[er]

business or property" by the conduct constituting the RICO violation and only when her "actual

loss becomes clear and definite."  *See Denney v. Deutshe Bank AG*, 443 F.3d 253, 266 (2d Cir.

2006) (citation and internal quotation marks omitted).  Defendants argue that Plaintiff's

allegations fail under both requirements.  The Court will address Defendants' arguments in turn.

**1.**     ***Plaintiff has Sufficiently Alleged Causation and Reliance***

The RICO statute provides that any person injured "by reason of a violation of

section 1962" may maintain a civil RICO suit.  18 U.S.C. § 1964(c).  The phrase "by reason of"

requires a plaintiff to allege that his injury was "both factually and proximately caused by the

alleged RICO violation."  *See DeFalco*, 244 F.3d at 329.

Citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), Defendants argue

that Plaintiff has failed to allege that her injuries, viz. her inability to collect on the judgments,

would not have occurred absent the alleged predicate acts.  Defendants also argue that Plaintiff

cannot establish reliance because all of the alleged misrepresentations were made to third parties.

In *Anza*, the plaintiff brought a RICO action against his competitor claiming

injury to his business caused by the competitor's alleged practice of unlawfully selling products

free of sales tax and submitting fraudulent sales tax returns by mail and wire fraud.  In finding

that the competitor's alleged defrauding of the state tax authority was not the proximate cause of

plaintiff's lost sales, the Supreme Court stated that "[w]hen a court evaluates a RICO claim for

proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." 547 U.S. at 461. Because the "direct victim of [the competitor's] conduct was the State of New York [in that] it was the State that was being defrauded and the State that lost tax revenue as a result," *id.* at 458, the Court found Plaintiff's claimed RICO damages were too attenuated. *Id.* at 459. Although the competitor also sought dismissal on the ground that plaintiff failed to allege that he relied on the competitor's misrepresentations, the Court declined to address the issue. *See id.* at 461 ("Because [plaintiff] has not satisfied the proximate-cause requirement . . ., we have no occasion to address the substantial question whether a showing of reliance is required.").

Subsequent to the parties' briefing on the instant motion, the Supreme Court resolved the issue of whether reliance is a prerequisite to a RICO claim predicated on mail fraud. In *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008), the Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentation."[2] *Id.* at 2145. The Court reasoned that "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentation." *Id.* at 2139. Although "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, . . . it is not in and of itself dispositive." *Id.* at 2144. "Nor is first-party reliance necessary to ensure that there is a

---

[2] Although the holding in *Bridge* was limited to the predicate act of mail fraud, the Court did note that "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim," 128 S. Ct. at 2141, suggesting that its holding extends beyond mail fraud.

sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's

injury to satisfy the proximate-cause principles articulated in . . . *Anza*." *Id.* Instead, the alleged

injury must be "a foreseeable and natural consequence" of the defendant's predicate acts. *Id.*

>The Court provided the following example:

>>[S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings.

*Id.* at 2139.

>Here, Plaintiff's allegations that she is unable to collect on her state judgments as

a result of Defendants' acts of mail and wire fraud are sufficient to satisfy the proximate cause

requirement under both *Anza* and *Bridge*, at least with regard to several of the predicate acts

alleged. For example, Defendants' transfer of monies and filing of false documents in the

bankruptcy proceeding both "led directly to [P]laintiff's injuries," i.e., her inability to satisfy her

judgments.[3] *Anza*, 547 U.S. at 461. Furthermore, under *Bridge*, Plaintiff's claim survives

notwithstanding the fact that the alleged misrepresentations were made to third parties and not to

---

[3] Some of Plaintiff's allegations, however, do not pass muster under *Anza*. For example, as Defendants point out, Plaintiff's allegations of insurance fraud, namely, that Defendants "inflated the value and existence of property purportedly lost in a fire . . . thereby obtaining insurance benefits from Zurich American Insurance Company greatly in excess of the actual loss of property" (Am. Compl. ¶ 306), which would have the effect of increasing the amount of money available to satisfy Plaintiff's outstanding judgments, could not plausibly have led to Plaintiff's injury. Similarly, there are no allegations explaining how the allegedly false tax returns filed by Klisivitch and non-defendant Itum, Ltd. led directly to Plaintiff's injury. Although Defendants raised these arguments in their briefs, Plaintiff failed to proffer any meaningful response. Accordingly, to the extent the Amended Complaint alleges insurance fraud and the filing of false tax returns as predicate acts, those allegations are dismissed pursuant to *Anza*.

Plaintiff, as Plaintiff's injury was "a foreseeable and natural consequence" of Defendant's predicate acts. Accordingly, the Court finds that Plaintiff has adequately alleged that she has been injured "by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

### 2.    *Plaintiff has Sufficiently Alleged a Clear and Definite Injury*

Defendants also argue that Plaintiff has failed to allege that her actual loss is clear and definite. The gravamen of Plaintiff's RICO claims is that as a result of Defendants' predicate acts, she is unable to collect the monies she is owed under the state court judgments and the QDRO. The Amended Complaint seeks damages for the counsel fees Plaintiff incurred seeking to collect these sums. In addition, Plaintiff seeks to amend her pleading to assert a claim for "lost debt" injuries, representing damages resulting from Klisivitch's "successful frustration of her right to collect her lawful debts against him." (Proposed Second Am. Compl. ¶ 337.) The proposed pleading alleges that this lost debt "may be reduced *pro tanto* based upon now pending state court proceedings concerning enforcement of [Plaintiff's] right to secure all of the funds presently held in . . . Klisivitch's IRRA." (*Id.*) In other words, Plaintiff seeks damages for the sums she claims are uncollectible, viz. the difference between outstanding judgments she is owed by Klisivitch and funds in his IRRA.

"[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *First Nat'l Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994). "Thus, a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated." *Id.*

For example, in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), the

plaintiff, a creditor of defendants, brought a RICO action asserting that it was injured by the defendants' bankruptcy fraud. Essentially, the plaintiff alleged that it had been injured by accepting a fraudulently induced bankruptcy reorganization plan that would have allowed it to recover only 17.5% of its allowed claim. The Second Circuit found that these damages were unrecoverable because the reorganization plan had been vacated and the bankruptcy proceedings were still pending.

> [I]t is impossible to determine the amount of damages that would be necessary to make plaintiff whole, because it is not known whether some or all of the fraudulently transferred funds will be recovered by the [debtor] corporation. Should they be recovered, [plaintiff] would benefit along with [the debtor's] other creditors and its injury would decrease. As a result, the damages in this area are "speculative" and "unprovable", *Zenith* [*Radio Corp. v. Hazeltine Research, Inc.*]*,* 401 U.S. [321,] 339, 91 S.Ct. [795,] 806 [(1971)] ; any claim for relief based on the lost-debt injury must therefore be dismissed without prejudice.

859 F.2d at 1106. The court went on to state that plaintiff could refile its action once damages became definite, at which point its cause of action would accrue. *Id.*

In *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993), a judgment creditor of a bankrupt company brought a RICO action claiming that the defendant-company fraudulently transferred assets to prevent the plaintiff from collecting on several judgments. The defendant-company filed a bankruptcy petition that was ultimately dismissed.

The Second Circuit reaffirmed the principle laid down in *Bankers Trust* that "a debt is 'lost' and thereby becomes a basis for RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation." 995 F.2d at 1165. It reasoned that "a RICO claim does not accrue until it is established that collection of the claim or judgment has been successfully frustrated." *Id.* at 1166. Put another way, a plaintiff has no RICO claim unless and

until it "ultimately fail[s] to collect the judgment." *Id.*  Because the plaintiff's collection efforts were ongoing – by virtue of the federal action itself in which plaintiff asserted that the transfers were fraudulent conveyances under state law – the actual amount of its injury was indefinite and unprovable; therefore, plaintiff did not yet have standing under RICO.  *Id.; see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (discussing *Stochastic*).        Here, Plaintiff seeks leave to amend her pleading to assert a claim for "lost debt" injuries, claiming that collection of the amounts owed on the state court judgments has been "successfully frustrated" by Defendants' predicate acts.  Because of the ongoing bankruptcy proceeding, any such proposed claim would fail at this time.  Accordingly, Plaintiff's request to amend her pleading to assert a "lost debt" injury is denied without prejudice.

        This does not end the analysis, however.  The Amended Complaint seeks recovery of counsel fees incurred by Plaintiff in seeking to "secure her rights to collect [on] the judgments."  (Am. Compl. ¶ 337.)  "[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation."  *Stochastic*, 995 F.2d at 1167.  In *Stochastic*, the Second Circuit held that the plaintiff could recover as RICO damages the legal fees and other expenses incurred in its attempt to collect the state court judgments, but not the fees and expenses incurred in originally obtaining those judgments.  *Id.*  Here, Plaintiff's allegations are sufficient to confer standing insofar as she seeks fees expended in attempting to collect on her judgments.  Accordingly, Defendants' motion to dismiss the Amended Complaint on standing grounds is denied.

### C.    Racketeering Acts

"Racketeering activity" is defined as certain criminal acts under state and federal law.  *See* 18 U.S.C. § 1961(1).  The Amended Complaint alleges that Defendants committed the following predicate acts: (1) mail fraud under 18 U.S.C. § 1341; (2) wire fraud under 18 U.S.C. § 1343; (3) financial institution fraud under 18 U.S.C. § 1344; (4) obstruction of justice under 18 U.S.C. § 1503; (5) money laundering under 18 U.S.C. § 1956; and (6) bankruptcy fraud pursuant to under 18 U.S.C. § 1961(1)(D).  The Court has already dismissed the predicate acts of mail and wire fraud to the extent they were premised on insurance fraud and the filing of false tax returns. (*See supra* at 11 n.3.)  Defendants also move to dismiss the predicate acts of financial institution fraud and money laundering.  Defendants' arguments are addressed separately below.

### 1.    *Defendants' Motion to Dismiss the Predicate Acts of Financial Institution Fraud is Granted*

Plaintiff alleges that Defendants committed financial institution fraud under 18 U.S.C. § 1344.  In order to maintain such a claim, a plaintiff must allege that a defendant "(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss."  *United States v. Crisci*, 273 F.3d 235, 239-40 (2d Cir. 2001).  Defendants argue that Plaintiff has failed to allege facts supporting either element. Plaintiff did not address this issue in her papers.  Because the Court agrees with Defendants, this predicate act is dismissed.

As an initial matter, and as noted by Defendants, Plaintiff fails to allege that any of the institutions involved in the alleged fraud (The Manhattan Mortgage Company, Inc., Greenpoint Mortgage Funding, Inc., and Zurich American Insurance Company) are federally

chartered or insured financial institutions. Because Plaintiff has failed to respond to Defendants'

assertion, and because there is nothing in the Amended Complaint to suggest otherwise, the

Court finds that Plaintiff's allegations of financial institution fraud are insufficient to survive

dismissal.

In addition, the facts alleged by Plaintiff support neither the inference that

Defendants' course of conduct was designed to deceive a federally chartered or insured bank into

releasing property nor the inference that Defendants possessed the requisite intent to victimize

such a financial institution by exposing it to loss. Instead, the pleading summarily alleges only

that the mortgage and insurance companies were victims of Defendants' RICO scheme, and not

that Defendants intended to victimize them. Moreover, the entire thrust of the pleading is that

Defendants diverted assets to injure Plaintiff and Plaintiff alone. (*See, e.g.*, Am. Compl. ¶ 173h

("Christa Ritter was and is the primary intended victim of the HATE RICO Enterprise scheme . .

. .").) Accordingly, any predicate acts relating to financial institution fraud under 18 U.S.C. §

1344 are dismissed.

1. ***Defendants' Motion to Dismiss the Predicate
Acts of Money Laundering is Denied***

Plaintiff alleges that Defendants engaged in the predicate act of money laundering

pursuant to 18 U.S.C. § 1956. A plaintiff seeking to maintain a money laundering claim must

allege: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact

involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7);

 (3) that the defendant knew that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity; and (4) that the defendant knew that the

financial transaction was designed in whole or in part to conceal or disguise the source,

ownership, control, etc., of those proceeds." *United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir. 1997).  Defendants argue that this predicate act should be dismissed because "Plaintiff has not alleged that Colette Klisivitch knew of the Company Defendants' alleged tax evasion or insurance fraud."  (Defs.' Mem. at 14.)  Even assuming that is the case, however, there are other unlawful acts alleged in the pleading which form the basis of Plaintiff's money laundering claim. For example, the Amended Complaint alleges that Colette Klisivitch knew that the cash involved in the alleged wire transfers represented the proceeds of illegal activity.  Accordingly, based on the arguments presented, Defendants' motion to dismiss the predicate acts of money laundering is denied.

### D.   *Pattern of Racketeering Activity*

To survive Defendants' motion to dismiss the substantive RICO count of the Amended Complaint (count seven), Plaintiff must allege that she was injured by Defendants' conduct through a pattern of racketeering activity.  A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period.  18 U.S.C. § 1961(5).  "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'"  *DeFalco*, 244 F.3d at 321 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern-a series of related predicate acts extending over a substantial period of time-or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  *Spool v. World Child Int'l Adoption*

*Agency*, 520 F.3d 178, 184 (2d Cir. 2008).   In addition, in analyzing the issue of continuity, the

Court must evaluate the RICO allegations with respect to each defendant individually.  *DeFalco*,

244 F.3d at 322 n.22.

Here, Plaintiff alleges that the RICO scheme is both closed-ended and open-

ended.  (Am. Compl. ¶ 133.)  Defendants contend that the Amended Complaint fails to allege

either pattern.  For the reasons that follow, the Court agrees.

### 1.    *Close-Ended Continuity*

"A closed-ended pattern of racketeering activity involves predicate acts

'extending over a substantial period of time.'"  *First Capital Asset Mgmt., Inc. v. Satinwood,*

*Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (quoting *GICC Capital Corp. v. Tech. Fin. Group, Inc.*,

67 F.3d 463, 466 (2d Cir. 1995)).  While this Circuit has not found acts spanning less than two

years to be a closed-ended pattern, acts that occurred over a longer period of time do not

necessarily form a pattern.  *Id.* ("[W]hile two years may be the *minimum* duration necessary to

find closed-ended continuity, the mere fact that predicate acts span two years is insufficient,

without more, to support a finding of a closed-ended pattern.").  "Although continuity is

'primarily a temporal concept, other factors such as the number and variety of predicate acts, the

number of both participants and victims, and the presence of separate schemes are also relevant

in determining whether closed-ended continuity exists.'"  *Id.* (quoting *DeFalco*, 244 F.3d at 321).

These "factors are more significant in cases where the period of time over which the alleged

racketeering acts borders on 'substantial.'  Where the alleged racketeering acts span nearly three

and one-half years, . . .  the presence or absence of the other factors is less critical."  *Fresh*

*Meadow Food Servs., LLC v. RB 175 Corp.*, Nos. 06-4905-CV(L), 07-0269-CV, 2008 WL

2566731, at *5 (2d Cir. June 24, 2008) (summary order).

Although multiple schemes are not required, *see Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("Congress did not mean 'to exclude from the reach of RICO multiple acts of racketeering simply because . . . they further but a single scheme'") (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) (en banc)), the Second Circuit has cautioned that "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Id.*; *see also GICC*, 67 F.3d at 467 ("That multiple schemes are not required in all circumstances does not mean that the number and nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant. Rather, a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic.").

In *Schlaifer Nance*, the plaintiff alleged that it was fraudulently induced into entering a licensing agreement with the defendant Estate of Andy Warhol by defendants' false representations that the Estate owned all the copyrights to all of Warhol's works of art, while in fact, many of Warhol's works had fallen into the public domain. *Id.* at 93. Plaintiff complained that the Estate committed a RICO violation by repeatedly defrauding plaintiff to maximize the value of the Estate. *Id.* at 96. The plaintiff alleged various acts that it claimed constituted a pattern of racketeering activity, including "fraudulently transferring [plaintiff's] rights under the Agreement to others," "accepting advance payments from sublicensees knowing [plaintiff] would not approve," "fabricating bases for the disapproval of the licensing of many products," "threatening to allege a known false claim of fraud against [plaintiff]," and "revising history through misrepresentation, deceit, and perjury, to cover up a pattern of racketeering activity."

*Id.* at 96-97.

In finding that plaintiff had failed to allege closed-ended continuity, the court noted that there was only "one purportedly fraudulent act: the negotiation of the Agreement. The acts complained of . . . are subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose." *Id.* at 98.

Here, the Amended Complaint, which is comprised of 114 pages of allegations and a 100-plus page exhibit, is not a model of clarity. As best the Court can glean, it appears that the first predicate act occurred in February 2004 when Klisivitch allegedly began fraudulently transferring assets, and the last predicate act occurred in June 2006 when Colette Panebianco allegedly gave false testimony in the bankruptcy proceeding. Thus, Plaintiff has alleged several predicate acts, all allegedly committed in furtherance of Defendants' alleged scheme to avoid payment of Plaintiff's judgments, spanning a little over two years. As noted above, however, that fact alone, viz. the duration of the scheme, is not sufficient.[4]

In *First Capital*, the Second Circuit was faced with similar allegations and held that the lower court properly dismissed the pleading. In that case, plaintiffs alleged that defendants' RICO violations and state-law fraudulent conveyance violations prevented plaintiffs from satisfying outstanding judgments. 385 F.3d at 165. Plaintiffs alleged various predicate acts, primarily bankruptcy and mail frauds. *Id.* Finding that plaintiffs had properly pled several

---

[4] Taking all predicate acts but those found insufficient above, the alleged RICO scheme spans over two years with regard to defendants Klisivitch and Colette Panebianco only. The isolated acts alleged to have been committed by the other defendants do not extend over a sufficiently long period of time to satisfy the requirements of closed-ended continuity. *See DeFalco*, 244 F.3d at 322 n.22 ("[T]he requirements of section 1962(c) must be established as to each defendant.") Accordingly, Plaintiff has failed to allege closed-ended continuity with regard to these other defendants.

predicate acts extending over two and one-half years with regard to one of the defendants, the

court nonetheless found:

> [W]e agree with the District Court that every factor other than
> duration cuts against a finding of closed-ended continuity in this case.
> At bottom, Plaintiffs have alleged that [defendant] engaged in a
> single scheme to defraud two creditors by quickly moving his
> assets to his relatives and then concealing the existence of those
> assets during his bankruptcy proceeding. But however egregious
> [defendant's] fraud on Plaintiffs may have been, they have failed
> to allege that he engaged in a pattern of racketeering activity.
> Accordingly, [the substantive RICO count] was properly dismissed
> as alleged against him.

*Id.*

Similarly, in this case, accepting all of Plaintiff's allegations as true, Plaintiff

alleges a pattern involving a single scheme of narrow scope, viz., the frustration of Plaintiff's

collections efforts, including one victim[5] and a limited number of related participants. *See*

*Jerome M. Sobel & Co. v. Fleck*, No. 03 CIV. 1041, 2003 WL 22839799, at *12 (S.D.N.Y. Dec.

1, 2003) ("[M]any cases finding no closed-ended continuity have pointed to the existence of only

one . . . victim.") (collecting cases), *Report & Recommendation adopted by*, 2004 WL 48877

(S.D.N.Y. Jan. 8, 2004).  Accordingly, the Court finds that the racketeering activity alleged here

does not constitute the sort of "long-term criminal conduct" that Congress sought to target in

RICO.  *See GICC Capital Corp.*, 67 F.3d at 469; *see also FD Prop. Holding, Inc. v. U.S. Traffic

Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally

held that where the conduct at issue involves a limited number of perpetrators and victims and a

---

[5] Although the Amended Complaint alleges summarily that Greenpoint Mortgage
Funding, Inc., The Manhattan Mortgage Company, Inc., Zurich American Insurance Company,
the IRS, and the New York State Department of Taxation and Finance were all victims of
Defendants' schemes, Plaintiff's racketeering acts involving these entities (financial institution
fraud, insurance fraud, and tax fraud) have all been dismissed.

limited goal, the conduct is lacking in closed-ended continuity. This is the case even when the scheme's duration exceeds one year.") (collecting cases).

### (2) *Open-Ended Continuity*

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *First Capital*, 385 F.3d at 180. In this Circuit, the "cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." *GICC Capital Corp.*, 67 F.3d at 466 (collecting cases). Open-ended continuity is established when "an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity [as] there is a threat of continued criminal activity." *DeFalco*, 244 F.3d at 323. However, "where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.*

As with the closed-ended analysis, the Court evaluates the RICO allegations with respect to each defendant individually. *See DeFalco*, 244 F.3d at 322 n.22. Here, with the exception of Klisivitch and Colette Panebianco, who are alleged to have made continual fraudulent misrepresentations in the ongoing bankruptcy proceeding, there is nothing in the Amended Complaint which suggests that any of the isolated predicate acts allegedly committed by the other defendants imply a threat of continued criminal activity. Accordingly, the Court finds that Plaintiff has failed to allege open-ended continuity as to these defendants.

As far as defendants Klisivitch and Colette Panebianco, Plaintiff argues that because the purpose of the alleged RICO scheme is to hide assets from which Plaintiff can collect on her money judgments, "so long as Ritter has viable money judgments against Klisivitch there exists a strong threat that the unlawful RICO acts will continue into the foreseeable future." (Pl.'s Updated Mem. at 19-20.) A similar argument was rejected by the Second Circuit in *First Capital*. In that case, the defendant-judgment debtor allegedly fraudulently conveyed all of his assets and then filed a fraudulent bankruptcy petition. Plaintiffs-judgment creditors brought a RICO action against the judgment debtor and his relatives, alleging that plaintiffs were hindered in their collection of judgments by defendants' RICO violations.

The Second Circuit found that "the nature of [the defendants'] alleged scheme to defraud [the judgment debtor's] creditors" did not suggest continual criminal activity and, thus, plaintiffs had failed to allege open-ended continuity. 385 F.3d at 180. The court reasoned that the defendants' "alleged bankruptcy fraud was 'inherently terminable'" because once the defendant "fraudulently conveyed his assets, which he allegedly accomplished by [the time] he filed for bankruptcy, the scheme essentially came to its conclusion." *Id.* at 180-81. Thus, it "'defie[d] logic to suggest that a threat of continued looting activity exists when,' as Plaintiffs admit, 'there is nothing left to loot.'" *Id.* at 181 (quoting *GICC*, 67 F.3d at 466). The court further found that "[n]otwithstanding the fact that [the defendant's] bankruptcy case appears to remain[] open, and that predicate acts of perjury and mail fraud continued for some time after [the defendant] filed his bankruptcy petition, no predicate acts have occurred since December 1999, which suggests that the scheme has wound to a close." *Id.* In any event, even if it has not, continued silent concealment of assets is not a predicate act." *Id.*

Here, although it would appear that Plaintiff's allegations of open-ended continuity cannot pass muster under *First Capital*, which Defendants cite to and rely upon in their briefs, Plaintiff has wholly failed to articulate, both in her pleading and in her motion papers, how her case is distinguishable. As in *First Capital*, Defendants' scheme seems "inherently terminable" as the last predicate act alleged with any specificity seemingly occurred years ago and any further "continued silent concealment of assets" by Klisivitch could not be considered a predicate act. *Id.* However, because Plaintiff has moved for leave to amend, and because Plaintiff suggests, albeit generally, that the "HATE RICO" scheme continues to this day as Klisivitch is still hiding assets, the Court will grant Plaintiff leave to amend. It may be that, unlike in *First Capital*, where plaintiffs alleged that the judgment debtor "ha[d] no assets left with which to repay them, and consequently no assets left to transfer in violation of the bankruptcy laws," *First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 585 (S.D.N.Y. 2002), *aff'd*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.2d 159 (2d Cir. 2004), Plaintiff can allege that Klisivitch continues to hide his assets through the commission of racketeering acts. Plaintiff is reminded, however, that any amendment to the RICO allegations, to the extent they are grounded in predicate acts sounding in fraud, must comply with the requirements of Rule 9(b). In addition, Plaintiff must plead continuity as to each defendant.

### E. *The RICO Conspiracy Count is Dismissed*

In addition to asserting substantive RICO claims under section 1962(c), Plaintiff alleges a RICO conspiracy claim under section 1962(d). This claim too must be dismissed. Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Thus, to establish the existence of a

RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (citation and internal quotation marks omitted); *accord First Capital*, 385 F.3d at 182. Because Plaintiff "did not adequately allege a substantive violation of RICO," her conspiracy claim is "properly dismissed." *First Capital*, 385 F.3d at 182 (citations omitted); *accord Nat'l Group for Commc'n and Computers Ltd. v. Lucent Techs. Inc.,* 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient.").

III.    *The State Law Claims*

The Amended Complaint asserts six state law claims against various defendants. Although Defendants' Notice of Motion seeks to dismiss "all" counts alleged in the Amended Complaint, Defendants' various memoranda of law do not discuss Count Two, which is a claim for conversion against Klisivitch and various unnamed John and Jane Does. Accordingly, the Court will not address this count. The remaining claims are discussed below.

A.    *Count One (Fraudulent Conveyance Claims)*

Count One of the Amended Complaint asserts violations of N.Y. Debtor and Creditor Law §§ 273, 273-a, 275, and 276 based upon Defendants' alleged fraudulent transfers. Defendants move to dismiss these claims on the ground that only the trustee in Klisivitch's bankruptcy proceeding has standing to assert them. Based on the papers as submitted, the Court agrees.

In *In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2d Cir. 1992), the Second Circuit held that fraudulent transfer claims asserted by creditors of the debtor against third-party

transferees of the debtor's assets are automatically stayed by 11 U.S.C. § 362(a)(1). Thus, "no individual creditor can assert the claim unless it has been abandoned or the creditor obtains relief from the automatic stay." *In re Keene Corp.*, 164 B.R. 844, 852 (Bankr. S.D.N.Y. 1994).

Here, Plaintiff argues that "[t]he Trustee, Andrew Tahler, Esq., who was appointed to Klisivitch's bankruptcy proceedings on September 13, 2004, abandoned any fraudulent transfer claim." (Pl.'s Mem. in Opp'n at 10.) Plaintiff cites to no statute, case law, or portion of the bankruptcy record in support of her contention. Defendants counter that "abandonment" in bankruptcy is governed by 11 U.S.C. § 554, which sets forth certain conditions that must be satisfied before a claim may be considered abandoned. Defendants also proffer a copy of the docket sheet in the bankruptcy proceeding which does not reflect that the claim has been abandoned by the trustee. In her reply papers, Plaintiff contends that even "[a]ssuming, *arguendo*, that the trustee . . . did not affirmatively abandon any fraudulent transfer claims, [Plaintiff] still has standing to assert" these claims. (Pl.'s Reply at 1.) Plaintiff has advanced no persuasive reason why this is the case. Accordingly, Count One is dismissed without prejudice to refile upon a showing of abandonment or a grant of relief from the automatic stay.

**B.    *Count Three (Tortious Interference)***

Count Three asserts a claim for "tortious prevention and interference with collection of assets." (Am. Compl. at 105.) Defendants move to dismiss this claim on the ground that there is no such cognizable claim under New York law. They assert that although New York law recognizes claims for tortious interference with actual or prospective contractual relations, Plaintiff has failed to identify any contract (either actual or prospective) that could

have been the subject of interference.

Plaintiff responds by seeking leave to amend her pleading to recharacterize her claim as one for "tortious prevention and interference with the Plaintiff's contractual rights that concern the collection of assets." (Proposed Second Am. Compl. at 109.) Neither side presents the Court with any controlling authority.

The Court's preliminary research has revealed that New York does recognize such a claim. In *James v. Powell*, 266 N.Y.S.2d 245 (1st Dep't 1966), *rev'd on other grounds*, 19 N.Y.2d 249 (1967), the First Department held that a judgment creditor had a cause of action at common law for tortious interference with the collectibility of a judgment against the judgment debtor and his wife resulting from the wife's transfer of property owned by the judgment debtor. The court found that the rights afforded by the New York Debtor and Creditor Law could not "be interpreted to take away from a creditor a remedy he had at common law." *Id.* at 248. It further stated that "[t]he amount of the judgment is not the measure of the damages; it is rather the loss or expense caused by the interference [although] [c]onceivably, this could embrace the judgment itself." *Id.* Accordingly, based on the arguments advanced, Defendants' motion to dismiss Count Three is denied.

C.      *Count Four (Fraud)*

Count Four asserts a claim for fraud based upon Defendants' alleged fraudulent conspiracy to deprive Plaintiff of the ability to collect on her judgments. Defendants argue that Plaintiff's fraud count fails to state a claim because Plaintiff has failed to allege any facts which suggest that she reasonably relied upon any misrepresentation or was injured as a result of any misrepresentation.

"[U]nder New York law, [t]o establish a claim for fraud, plaintiff must show that (1) the defendants misrepresented a material fact; (2) the defendants knew they were making a false misrepresentation; (3) [plaintiff] justifiably relied on such misrepresentation; and (4) [plaintiff] suffered harm as a result." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006) (citations and internal quotation marks omitted). In addition, New York law does permit recovery for misrepresentations made to third parties under limited circumstances. *See Securities Inv. Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 76-77 (2d Cir. 2000). "[T]o recover in New York for misrepresentations made to a third party, the plaintiff must establish that he or she relied to his or her detriment on the misrepresentations and that the defendant intended those misrepresentations to be communicated to the plaintiff." As noted by the Second Circuit:

> Analyzing the reliance element in third-party fraud cases, several decisions have suggested that a plaintiff may demonstrate reliance where the third party does not directly repeat the defendant's misrepresentations to the plaintiff, but rather communicates them in a repackaged or summary form, on which the plaintiff then relied. In *Tindle v. Birkett*, 171 N.Y. 520, 64 N.E. 210 (1902) for example, the New York Court of Appeals permitted recovery for misrepresentations made by the defendants to a credit rating agency for purposes of receiving a favorable rating. The plaintiffs never received those misrepresentations directly, but rather relied on the favorable credit rating the agency had formulated using the defendants' misinformation. *See id.* at 522-23, 64 N.E. 210. The Court of Appeals found that because the plaintiffs extended credit to the defendants "in reliance on the correctness of the rating, without any other knowledge [of the defendant's financial situation]," they had established the reliance necessary to sustain a fraud claim against the defendant. *Id.* at 523, 64 N.E. 210.

*Id.* at 77.

Here, the Amended Complaint alleges reliance as follows:

> [Plaintiff] reasonably relied on Klisivitch to "obey statutes, court
> orders, court rules, rules of evidence, written agreements,
> representations to the court by officers of the court, and
> representations under oath to the court, by officers of the court,
> and representations made under oath to the court by him and to the
> bankruptcy trustee, in his testimony at a creditors' committee
> examination, held on September 23, 2004, and in the oral
> deposition held on May 30, 2006 and [Plaintiff] reasonably relied
> upon the required papers, schedules, tax returns and other writings
> submitted on his behalf in judicial proceedings in the Supreme
> Court, State of New York, County of Suffolk, and United States
> Bankruptcy Proceeding, as set forth herein.
>
> [Plaintiff] reasonably relied on Colette Panebianco to obey
> statutes, court orders, court rules, rules of evidence, written
> representations to the court by officers of the court, and
> representations made under oath to the court by Colette
> Panebianco and in her oral deposition held on June 7, 2006, and
> [Plaintiff] reasonably relied upon the required papers, schedules
> and other writings submitted on her behalf in judicial proceedings
> in the United States Bankruptcy Proceeding, as set forth herein.

(Am. Compl. ¶¶ 171-72.) These allegations are insufficient to plead reasonable reliance and

resulting damages. As noted by Defendants, "[P]laintiff essentially alleges that she relied upon

[De]fendants to 'do the right thing,' but she does not establish any specific misrepresentations

[nor] does she state what she did as the result of her alleged reliance . . . ." (Defs.' Mem. at 7.)

"[T]he gist of [P]laintiff's Amended Complaint is that [D]efendants conspired to 'hide' and

'conceal' information from her – not that [D]efendants intentionally influenced her to act (or

forgo taking action), to her detriment." (Defs.' Reply at 8.) Accordingly, Plaintiff's fourth

count is dismissed. However, because Plaintiff's opposition papers suggest that Plaintiff may be

able to plead specific misrepresentations that she relied on to her detriment, Plaintiff is granted

leave to amend her fraud claim.

**D.**     *Count Five (Prima Facie Tort)*

Count Five asserts a claim for "prima facie tort-economic injury." (Am. Compl. at 107.) This count alleges that Defendants intentionally "inflicted economic distress and loss upon [Plaintiff]" by "preventing her from collecting the monies due to her which she was entitled as a result of" her judgments. (*Id.*)

A cause of action for prima facie tort requires a showing of "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). The general principle behind this tort is that "harm intentionally inflicted is prima facie actionable unless justified." *Id.* "Prima facie tort" serves as a catch-all cause of action in tort where no other suitable one exists; it may be pleaded in the alternative to other forms of tort, but if one is established, the prima facie tort claim "disappears." *Id.*

"'Disinterested malevolence'" is the touchstone of this cause of action, "meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983)). "[M]otives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim." *Id.* (citation and internal quotation marks omitted).

Here, the Amended Complaint alleges that Defendants were "solely motivated by 'disinterested malevolence.'" (Am. Compl. ¶ 376.) Despite these allegations, it is clear from other allegations in the pleading that Defendants' primary motive was at all times based on self-

interest.  Accordingly, Plaintiff's claim for prima facie tort fails to state cause of action.  *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 251 (S.D.N.Y. 2001) ("When a plaintiff sets forth allegations that indicate that other motives were involved in the complained of conduct besides disinterested malevolence, the cause of action must be dismissed.").[6]  Because Plaintiff has failed to articulate any basis upon which leave to amend could be grounded, any such request is denied.

### E.    *Count Six (Intentional Infliction of Emotional Distress)*

Plaintiff's sixth cause of action is for intentional infliction of emotional distress. Plaintiff alleges that by "preventing her from collecting the monies due to her," Defendants "intentionally inflicted harm to Plaintiff."  (Am. Compl. ¶ 380.)

"As New York's highest court has observed, the standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'"  *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993), *aff'd in part*, 82 N.Y.2d 690 (1993)).  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* (citations and internal quotations omitted).  Here, Defendants' alleged conduct, even if accepted as true, simply does not rise to this level of outrageousness.[7]  Accordingly, Defendants' motion to dismiss the Sixth

---

[6]  In addition, Plaintiff's damages are entirely duplicative of her tortious interference damages.  *See U.S. for Use and Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Co.*, 95 F.3d 153, 161 (2d Cir. 1996).

[7]  For example, "Plaintiff[] w[as] not physically threatened, verbally abused, or publicly humiliated in any manner."  *Conboy*, 241 F.3d at 258 (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 2001)).

Count is granted and Plaintiff's request for leave to amend is denied.

Finally, to the extent Plaintiff attempts to salvage this claim by asserting that Defendants *conspired* to inflict emotional distress, her claim still fails. "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)). Although "a conspiracy may be alleged[] for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others," the allegations of conspiracy must be tied to "an otherwise actionable tort." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005) (citations and internal quotation marks omitted). Thus, "[a] claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded." *Id.* (citation and internal quotation marks omitted).

## IV. *Plaintiff's Cross-Motion to Consolidate*

Plaintiff cross-moves for an Order pursuant to Rule 42 consolidating this action with another action commenced by Plaintiff against defendants Klisivitch and Colette Panebianco under docket no. 07CV1853. This second action was commenced on May 3, 2007 and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) declaring that Plaintiff has an equitable interest in certain real property purchased by Colette Panebianco with funds allegedly fraudulently transferred to her by Klisivitch. This transfer is also the subject of Plaintiff's claims in this action. On December 12, 2007, Magistrate Judge William D. Wall stayed the latter action, noting that the resolution of Defendants' motion to dismiss in this case may well resolve the issues in Plaintiff's second suit.

Rule 42 empowers a trial judge to consolidate actions for trial when there are common issues of law or fact to avoid unnecessary costs or delay. Specifically, the Rule provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a). District courts have "broad discretion to determine whether consolidation is appropriate," and they "have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). "However, the discretion to consolidate is not unfettered." *Id.* at 1285. Thus, in deciding whether to exercise its discretion to consolidate, a district court must consider "whether the specific risks of prejudice and possible confusion are overborne by risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to consolidate multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.*

Defendants proffer no argument in opposition to consolidation. Instead, their sole argument is that once the Court dismisses the instant action, Plaintiff's cross-motion to consolidate should be denied as moot. The flaw in Defendants' argument is that the Court has not dismissed this action in its entirety and, in any event, has granted Plaintiff leave to amend. Accordingly, because Defendants have not articulated any prejudice they might suffer should the two actions be consolidated, and because the Court finds that the two cases involve common questions of both law and fact, the Court grants Plaintiff's cross-motion for consolidation.

*CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED IN PART AND DENIED IN PART. Defendants' motion is GRANTED to the extent Counts One (New York State Debtor and Creditor Law), Count Four (Fraud), Count Five (Prima Facie Tort), Count Six (Intentional Infliction if Emotional Distress), Count Seven (18 U.S.C. § 1962(c)), and Count Eight (18 U.S.C. § 1962(d)) are DISMISSED. Defendants' motion is DENIED with regard to Count Two (Conversion) and Count Three (Tortious Interference With the Collection of Assets).

In addition, Plaintiff's cross-motion for consolidation is granted. This action is hereby consolidated with case no. 07 CV 1853 for all purposes. All relevant documents and submissions shall be maintained as one file under case number 06 CV 5511. The Clerk of the Court is hereby directed to close case no. 07 CV 1853.

Finally, Plaintiff's cross-motion to amend the pleading filed in this action is GRANTED with regard to Plaintiff's RICO and fraud claims only. However, Plaintiff is hereby advised that failure to address the pleading concerns enunciated in this Order may result in dismissal with prejudice. Plaintiff is further cautioned that any amendment is subject to scrutiny under Rule 11. Plaintiff shall file any amended pleading on or before August 26, 2008.

**SO ORDERED.**

Dated: Central Islip, N.Y.
        July 30, 2008

/s_____
Denis R. Hurley,
United States District Judge